[Cite as *State v. Overstreet*, 2013-Ohio-540.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-P-0049** |
| JAMEAL O. OVERSTREET, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2011 CR 0725.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Leonard J. Breiding, II*, 4825 Almond Way, Ravenna, OH 44266 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Jameal O. Overstreet, appeals his convictions, after a jury trial, of three counts of aggravated robbery, one count of failure to comply with the order or signal of a police officer, and one count of tampering with evidence. Each aggravated robbery count carried a firearm specification. Appellant was sentenced to a total prison term of 31 years. On appeal, this court must determine whether appellant's sentence

was improper and whether the convictions are supported by sufficient evidence and/or against the manifest weight of the evidence.

{¶2} On November 18, 2011, appellant began his day by arguing about money with the mother of his child, Mary Sanders. The argument became physical and 9-1-1 was called. Ms. Sanders recalls that when appellant left the home he carried a gun, but she was unable to identify a state's exhibit depicting a gun.

{¶3} At trial, Mr. James Hunter testified. Mr. Hunter was the first witness to encounter appellant after appellant angrily left his home. Mr. Hunter, an 80-year-old man, stated he was outside in his driveway on November 18, 2011, when a man approached him and stated he was robbing Mr. Hunter. The individual notified Mr. Hunter that he had a gun; Mr. Hunter observed part of the gun. The individual took Mr. Hunter's wallet, which contained nine dollars. Mr. Hunter stated he attempted to run and then heard the tires of his truck spinning, and the vehicle drove into Mr. Hunter's hedges. Mr. Hunter called the police. Mr. Hunter described the man as wearing a mask and heavy clothing: long baggy pants, heavy jacket, and a hood over his head. At trial, Mr. Hunter identified the state's exhibit depicting the gun as similar to the gun on the suspect.

**November 18, 2011, at approximately 5:00 p.m.**

{¶4} Ms. Cynthia Weber testified that when she arrived home from work on November 18, 2011, at approximately 5:00 p.m., she was approached by a gentleman wearing a white hoodie. Ms. Weber stated that the man pulled a gun—"dull silvery with black on it"—and demanded her vehicle, a Nissan Sentra; she complied. Ms. Weber called the police. Eventually, the contents of Ms. Weber's purse, which was on the front

2

seat of her vehicle, were recovered from a nearby backyard. Ms. Weber's vehicle was recovered the same day. A cell phone and camera were not found in the nearby backyard, but were later recovered and identified at the police station. Furthermore, Ms. Weber identified the gun used by the man during the robbery as the same gun later found in the console of a stolen black Jetta.

{¶5} Patrolman Kevin Lafferty of the city of Ravenna Police Department testified that he became involved in the investigation of two separate armed robberies. He stated that he recovered a stolen Nissan Sentra. Patrolman Lafferty swabbed the vehicle for DNA and processed the car for fingerprints. No DNA or fingerprints were able to be identified.

### November 18, 2011, at approximately 9:30 p.m.

{¶6} Officer Sarah Berkey of the city of Kent Police Department testified to one of the November 18, 2011 events. Officer Berkey noted that she was working the afternoon shift when a robbery was reported. She arrived and spoke to the two victims, Daniel Wilson and Samuel Legenza, who stated they were approached by a black male wearing a dark-colored hoodie or heavy jacket that had fur around the lining. The black male approached them, brandished a gun, took their wallets, and left in the victim's vehicle. Investigating this incident, Officer Berkey spoke to two women who were sitting in their vehicle and stated they observed a suspicious male; the women gave the same description.

{¶7} Officer Joseph Knotek of the Kent State University Police Department testified that on November 18, 2011, at approximately 9:30 p.m., he received a report of an armed carjacking on the campus of Kent State University. The stolen vehicle was

3

reported as a black Jetta with only one headlight; both the passenger's side headlight and the tail lights were inoperable. Officer Knotek was also aware of the stolen vehicle's license plate number. It was reported that the suspect was described as a black male, approximately 20-25 years of age, and wearing a dark-colored parka with a fur collar.

{¶8} Mr. Legenza testified that he was in the parking lot of his apartment complex, retrieving items from the backseat of his vehicle, when a black male approached him. The male had a gun, pointed the gun at Mr. Legenza, and demanded money. Mr. Wilson testified to the same version of events.

{¶9} Officer Knotek stated he was driving in his police cruiser when he observed the stolen vehicle. He activated the sirens and lights, but the vehicle began to flee. The vehicle, which reached speeds of 110 mph, eventually crashed, and the suspect fled on foot. Subsequently, the vehicle was searched and an unloaded 40 caliber Smith and Wesson was located in the center console—no magazine was found. The serial number of the gun revealed that it had been reported stolen during a burglary or home invasion in 2009.

{¶10} Mr. John Guth lived approximately 100 yards from the scene of this accident and testified that, approximately 30 minutes after the crash, there was a knock at his door. Mr. Guth observed a "young fella" at his door; Mr. Guth picked up his gun, and the man walked away. Mr. Guth then called the police.

{¶11} Deputy Noel of the Portage County Sheriff's Office arrived at Mr. Guth's residence; Mr. Guth positively identified appellant as the individual arriving at his home.

4

The following day, Mr. Guth found a loaded Smith and Wesson magazine, which was stamped 40 caliber and contained two rounds, in his shed.

**November 18, 2011, between 10:00 and 11:30 p.m.**

{¶12} Ms. Shea Porter testified that a young man knocked on her door. Answering, Ms. Porter discovered that this individual had just been in a car accident and needed a place to charge his cell phone, as the battery was dead. Ms. Porter let the individual into her home. Ms. Porter overheard some of the individual's conversation— that he had messed up and was looking for a ride back to Akron. Ms. Porter described the individual as black and wearing puffy clothing. The individual told Ms. Porter that his name was Jameal Overstreet and informed her about the incident at Mr. Guth's residence. Ms. Porter was able to positively identify appellant in a photograph line-up.

**November 19, 2011, at approximately 3:30 a.m.**

{¶13} At approximately 3:30 a.m., Officer Knotek received a telephone call reporting a black male walking on the road. Officer Knotek met with the subject and asked him basic questions which he could not answer. Officer Knotek learned that the individual was appellant and that he had an active warrant out for his arrest. Appellant was wearing a large blue winter jacket with a fur-lined collar, several layers of pants, and several layers of shirts, including a white sweatshirt. Appellant was arrested. On appellant's person were four cell phones and numerous cameras.

{¶14} Ms. Linda Eveleth, a forensic scientist in the DNA Division of the Ohio Bureau of Criminal Identification and Investigation testified that a swab from the trigger of the gun is a mixture consistent with contributions from appellant and at least two other individuals. Further, Ms. Eveleth stated the partial DNA profile from the airbag of

5

the Jetta is a mixture from at least two individuals, at least one being male; and the partial DNA profile from the swab of the magazine was insufficient for comparison purposes.

{¶15} Mr. Jonathan Gardner, a forensic scientist in the firearms section of the Ohio Bureau of Criminal Identification testified that although the gun was significantly damaged, the gun was able to fire normally and was operable.

{¶16} The jury found appellant guilty on all counts. Appellant filed a delayed appeal which was granted.

{¶17} Appellant's first assignment of error states:

{¶18} "The trial court erred in sentencing the appellant by imposing more than the minimum sentence and by imposing an improper sentence."

{¶19} We have previously explained that in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, the Ohio Supreme Court established a two-step analysis for an appellate court reviewing a felony sentence. In the first step, we consider whether the trial court adhered to "all applicable rules and statutes in imposing the sentence." *Id.* at ¶26. "As a purely legal question, this is subject to review only to determine whether it is clearly and convincingly contrary to law, the standard found in R.C. 2953.08(G)." *Id.*

{¶20} As the Ninth Appellate District observed:

{¶21} *Kalish* did not specifically provide guidance as to the 'laws and rules' an appellate court must consider to ensure the sentence clearly and convincingly conforms to Ohio law. The specific mandate of *Kalish* is that the sentence fall within the statutory range

for the felony of which a defendant is convicted. *State v. Gooden*, 9th Dist. No. 24896, 2010-Ohio-1961, ¶48, citing *Kalish* at ¶15.

**{¶22}** Next, if the first step is satisfied, we consider whether, in selecting the actual term of imprisonment within the permissible statutory range, the trial court abused its discretion. *Kalish*, *supra*, ¶26. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

**{¶23}** Addressing the first step of the *Kalish* test, appellant was found guilty of three counts of aggravated robbery, felonies of the first degree, to which he was sentenced to seven years in prison on each count—within the statutory range. R.C. 2929.14(A)(1). Appellant was also found guilty of two felonies of the third degree: tampering with evidence and failure to comply with the order or signal of a police officer. Pursuant to R.C. 2929.14(A)(3), a prison term between 12 and 36 months can be imposed for such a felony. In this case, the trial court imposed a 12-month and 36-month term of imprisonment, respectively—both within the statutory range. Although appellant does not assign error to the firearm specifications, we find that each of the aggravated robbery charges carried a mandatory three-year firearm specification. R.C. 2929.14(D) and R.C. 2941.145. The trial court, however, merged the firearm specifications in Count 7 and Count 8.

**{¶24}** Appellant's sentence was therefore within the statutory range for these offenses and did not run afoul of sentencing laws existing at the time of his sentencing.

7

{¶25} We next address the second step of *Kalish*: whether the sentence selected by the trial court was an abuse of discretion.

{¶26} While the trial court is required to consider the R.C. 2929.12 factors, "the court is not required to 'use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors (of R.C. 2929.12).'" *State v. Webb*, 11th Dist. No. 2003-L-078, 2004-Ohio-4198, ¶10, quoting *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000). Furthermore, this court has concluded that "a silent record raises a presumption that the relevant statutory factors were duly considered before the sentencing determination was made." *State v. Tenney*, 11th Dist. No. 2009-A-0015, 2010-Ohio-6248, ¶14. Despite this, appellant argues the trial court failed to consider R.C. 2929.11 and R.C. 2929.12. We disagree.

{¶27} In its judgment entry, the trial court noted that it has considered the purpose of felony sentencing; the need for incapacitating appellant; deterring appellant and others from future crime; rehabilitating appellant; and making restitution to the victim of the offense, the public, or both. Further, the trial court stated it had considered the evidence presented by counsel, oral statements, any victim impact statement, the pre-sentence report, and appellant's statements.

{¶28} Consequently, we find appellant's first assigned error without merit.

{¶29} As his second and third assignments of error, appellant alleges:

{¶30} [2.] Appellant's convictions of three counts of aggravated robbery with * * * firearm specifications, failure to comply with the order or signal of police officer, and tampering with evidence, were contrary to the manifest weight of the evidence.

8

**{¶31}** [3.] The trial court erred in failing to grant appellant's Criminal Rule 29 motion to dismiss the three counts of aggravated robbery with firearm specifications, the count of failure to comply with the order or signal of police officer, and the count of tampering with evidence, at the conclusion of the state's case and at the conclusion of the evidence.

**{¶32}** For ease of discussion, we first address appellant's third assignment of error. An appellate court reviewing the sufficiency of the evidence examines the evidence admitted at trial and determines whether, after viewing the evidence in a light most favorable to the state, the trier of fact could have found all elements of the crime proven beyond a reasonable doubt. *State v. Schlee*, 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, *13 (Dec. 23, 1994); *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). "On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id*. at 386.

**{¶33}** On appeal, appellant merely asserts the state did not "prove all of the essential elements of each charge, nor the firearm specification." Appellant defines his sufficiency argument strictly in terms that there was inadequate evidence but, in doing so, fails to support or put forth a substantive argument in support of this conclusion. App.R. 16(A)(7). We therefore conclude that, given the record and testimony at the trial court, there was sufficient evidence to support appellant's convictions.

9

{¶34} Appellant's third assignment of error is without merit.

{¶35} Under appellant's second assignment of error, he states his convictions were against the manifest weight of the evidence.

{¶36} To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In weighing the evidence submitted at a criminal trial, an appellate court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶37} Under this assigned error, appellant argues that Officer Knotek never observed who was driving the Jetta. Appellant also takes issue with the identification of each of the witnesses: Mr. Hunter, Ms. Weber, Mr. Wilson, and Mr. Legenza. First, appellant maintains that Mr. Hunter was unable to positively identify appellant as the suspect; Mr. Hunter identified three potential suspects, one of which was appellant. Second, appellant argues that although Ms. Weber positively identified appellant in a photograph line-up, she hesitated before doing so. Further, the photograph of appellant, taken the day after the robbery, demonstrated that appellant had a goatee, although Ms. Weber identified the suspect as clean-shaven. Third, neither Mr. Wilson nor Mr. Legenza was able to get a "good look" at the suspect's face.

**{¶38}** We note the weight to be given to the evidence and the credibility of witnesses are primarily matters for the jury to decide. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). Further:

> **{¶39}** The trier of fact is free to believe or disbelieve all or any of the testimony. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. Consequently, although an appellate court must act as a 'thirteenth juror' when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. *State v. Sevilla*, 10th Dist. No. 06AP-954, 2007-Ohio-2789, ¶13.

**{¶40}** In the instant case, the jury was presented with inconsistencies regarding the photograph line-up, and therefore, the jury had to determine the credibility of each witness. The jury heard the testimony of each witness. All of the witnesses testified that the suspect was a black male brandishing a gun. All of the three robbery victims further testified to the suspect's clothing: the same clothing appellant was wearing at the time of his arrest. Further, although Officer Knotek was unable to observe the driver of the Jetta, the jury heard testimony that appellant's DNA profile was consistent with that on the gun found in the vehicle's console. The jury also heard the testimony of Mr. Guth, the individual who lived less than 100 yards from the scene of the accident. Mr. Guth was able to identify appellant as the individual who knocked on his door shortly after the accident.

{¶41} Therefore, after reviewing the record and weighing the evidence and all reasonable inferences, we cannot conclude the jury lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. Appellant's second assignment of error is not well founded.

{¶42} Based on the opinion of this court, the judgment of the Portage County Court of Common Pleas is hereby affirmed.

DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.